We have raised four grounds on appeal, all of which merit this court's attention, but I hope this morning we can focus on our first ground and maybe our fourth ground, our 924C grounds, in which we've argued in ground one that because cyberstalking is not a crime of violence, this court should reverse Ms. Elkins' 924C conviction altogether, and in ground four, that if nothing else, because of a guidelines error, this court should reverse Ms. Elkins' 924C life sentence. Ms. Elkins was convicted here on three counts, first, conspiracy to commit cyberstalking, second, cyberstalking, and third, under 18 U.S.C., 924C, of discharging a firearm during a crime of violence. And the crime of violence alleged in count three was count two, the cyberstalking offense. The government does not dispute that generic cyberstalking or regular cyberstalking is not a crime of violence, and indeed, it can be committed by causing emotional distress or in some cases by threatening to harm oneself. So while the analysis here can be complicated, the question before the court is really very narrow. Does the resulting in death enhancing element that Ms. Elkins was also found guilty of, does it satisfy 924C's elements clause? In other words, does it require proof of the use, attempted use, or threatened use of force against the person or property of another? As the government cannot dispute, the enhancing element contains no culpable mental state language, no mens rea requirement, which is a problem after Borden, in which the Supreme Court's clause excludes reckless conduct. So the ultimate question really is, is it possible to be guilty of this offense where you have at most recklessly caused death? In our briefing, we imagine four such scenarios, and in its brief, the government takes issue with two of them, the cyberstalker who accidentally shoots his girlfriend or the victim who dies in a car accident while fleeing for stalking. But as to the other two scenarios we imagine, where the victim takes her own life or where a third party, a disappointed suitor, kills the victim, the government does not dispute that there, the cyberstalker at most recklessly caused his victim's death, which should be the end of the matter. But resisting that conclusion, and citing a Fourth Circuit case, United States v. Runyon, the government contends that generic cyberstalking's intent requirement must travel to the separate section of the United States Code that contains the resulting in death enhancing element. Now, Runyon is a conspiracy to commit murder for hire case with a similar resulting in death enhancing element. There, the enhancing element is in the same section of the code, but the bigger problem with Runyon is that the Fourth Circuit's holding was not a matter of statutory interpretation. There the court held that the intent requirement must carry over only because there was no realistic probability of the government prosecuting someone for the offense where it did not. The problem with that is that a year later, in Taylor in 2022, the Supreme Court made clear that that is the test when we are comparing state statutes to federal definitions. If we are looking at whether a Texas offense is a violent felony under the Armed Career Criminal Act, for example, when we are comparing federal statutes, as we are here, the question is simply whether the statute requires proof of the deliberate use, attempted use, or threatened use of force. And indeed, all of the government's authority and opposition to this ground suffers from that problem or the related problem that it's based on pre-boarded decisions holding that offenses were crimes of violence because they could be committed recklessly. What we have here then is much like the Ross case that we cited in our briefing, the Eighth Circuit held that kidnapping resulting in death was a crime of violence. Then the Supreme Court decided boarded, and on remand, the government there conceded that kidnapping resulting in death was not a crime of violence because a kidnapper could recklessly cause death, and the Eighth Circuit held accordingly. This court has also had occasion to consider the kidnapping resulting in death statute in a case called Hall. Pre-boarded, this court held that it was a crime of violence. Post-boarded, in a footnote in a case United States versus Appellant 1, this court noted that that decision stood on shaky ground after boarded. So what we are asking the court to do here- But was that, that was an unpublished decision of the appellant? Yes. And so, no, that's actually incorrect, Your Honor. I believe that was published. Was it published? Okay. Yes. But what we are asking the court to do then, I suppose, is to take this footnote from United States versus Appellant 1 and make it the holding here, recognize that post-boarded, because cyberstalking resulting in death can be committed recklessly, like kidnapping resulting in death, it is not a crime of violence. Certainly then, this court should reverse Ms. Elkins' conviction and life sentence on count three. But that is not her only life sentence. She was also sentenced to life in prison on count two, the cyberstalking count, which is where this idea of bundling and sentencing packages comes in. And the idea here is really very simple, and that is that when the court sentenced Ms. Elkins, the court did not do so piecemeal. The court was sentencing Ms. Elkins on all three counts at the same time, and only the court knows if the sentence on count three affected the sentence on count two. It is possible, on remand, that the district court will re-sentence Ms. Elkins to life in prison on count two. The court may do so very quickly. But what we are asking this court to do is to afford the district court that deference and respect to let the district court tell us whether or not count three affected count two. If there are no questions, I will turn to count four, or ground four, rather. In our fourth ground, we explain that even if this court disagrees with everything I just said, this court still should reverse Ms. Elkins' sentence on count three, because the district court here made a guideline. As the court's statement of reasons made explicit, the district court believed that the guideline's range was ten years to life. In fact, there's no guideline's range at all. There's just a guideline sentence here. It's ten years. In its briefing, the government argues that it's not so clear because the court adopted the PSR, which correctly set out the guideline sentence. But even if that's true, under this court's decisions in Juarez in 2016 and Johnson in 2024, the remedy is to vacate Ms. Elkins' sentence and remand for re-sentencing and  So, really, either way, if this court does not reverse her conviction altogether, this court should reverse her sentence. If the court doesn't have any questions, I'll cede the balance of my time. You've saved time for about, thank you, Mr. Ahoy. Mr. Bradshaw? Good morning, Your Honors. Thank you, Judge Smith. John Bradshaw for the United States. Ms. Elkins' argument that cyber-stalking resulting in death is not a crime of violence is not just counterintuitive. It's wrong. There are three features of the cyber-stalking statute when it charges the most aggravated offense, that is, death results, that means that it necessarily uses violent force. First, this is a specific intent statute. The statute requires a specific intent to harm and a specific intent to harm a particular person. Second, the statute requires that the victim's death actually result from a course of conduct. And third, the Supreme Court and Delegati just last term confirmed that when death results or the victim dies, then necessarily the defendant has used the right amount of force, the right quantity of force. Those three features make cyber-stalking resulting in death a crime of violence. Now, this morning, Mr. Orderly argues that cyber-stalking resulting in death is not a crime of violence because the death can be committed recklessly. And for that proposition, he relies on Borden. But the Borden plurality's concern with making reckless drivers violent felons under the ACCA has no application here because this statute is a specific intent statute. As I mentioned in my first reason, this statute requires a specific intent to harm. For that reason, it is likely a statute that the Fourth Circuit examined in the Runyon case, which was conspiracy to commit murder for hire resulting in death. And there, the Fourth Circuit rejected the argument that the death could result recklessly because the statute requires a specific intent to harm there to murder. If this court were to hold that the death results element can be committed recklessly, then all manner of death results offenses would be excluded as force clause offenses. So we have the murder for hire resulting in death. That was the case in Runyon. Also using a weapon of mass destruction resulting in death, which was the case that the First Circuit examined in Sarnia. Both of those crimes would fall outside of the use of force clause in 924C if Mr. Ortaway's argument is correct, simply because the death could be caused recklessly. Nothing in Borden commands that result, and this court should not split with the Fourth Circuit's analysis in Runyon. Mr. Ortaway also mentioned that the government has conceded in its brief two of his hypotheticals. I want to push back on how the government has not conceded in this case any of his hypotheticals. The hypotheticals he put in his brief are where most of them are built on a case called United States v. Sayre, where the defendant is purposefully stalking and harassing the victim over a course of many months. He told his cellmate in that case, I made her life hell by sending people to her house. In that case, where the defendant stalks a victim and then posts their address online and someone else shows up, it's not that he doesn't have an intent to harm her. This is not a recklessness problem. Mr. Ortaway's concern seems to be more with indirect causation. But the Supreme Court in Delegati just last term confirmed that indirect causation satisfies the force clause. And that holding ratified this court's holding in United States v. Reyes-Contreras, the en banc decision, where this court confirmed that indirect force satisfies the force clause. So for the three reasons I've mentioned, first, that the statute requires a specific intent to harm, second, that the statute requires actual causation of death, and third, that death must result, this court should reject Ms. Elkin's argument that cyberstalking resulting in death is not a crime of violence. What is your view of the status of the Hall case now? So Hall was actually slightly different. Hall was a capital kidnapping resulting in death. And so the second part of Hall, which says, because this is a capital crime, we're necessarily including the intent element from the Federal Death Penalty Act, that part of the holding is still good law and it's certainly not called into question by board. The status of whether kidnapping resulting in death is a crime of violence, I understand the government has conceded that issue in the Ross case. Our position is consistent with that concession today. But this statute is different. Kidnap, the result there does not control the result here. Because as Judge Dennis recognized in his dissent in Enray Hall, the kidnapping statute can actually be committed by trick or embegglement. So you can violate 1201A without ever actually harming the victim. And here, the cyberstalking statute is not that way. Again, it requires a specific intent to harm the victim, to kill, injure, harass. And so for that reason, the kidnapping statute is the same. Are you saying that the penalty piece of this, the resulting in death, is severable from the rest, I guess because it has a different penalty? In terms of whether the modified categorical approach applies, yes, Your Honor. So because... So what if your original intent is to intimidate? You don't have any intent to physically harm. How does that work with the resulting in death? Because when the defendant specifically intends to harm this person and through a course of conduct actually causes their death, then necessarily the defendant has used violence force to do that. And I think to answer your original question, yes, this is different because death results. And that piece of Enray Hall, Judge Smith, is still very good law. So because the penalty provision sets out a different element under garage and Enray Hall, then this is a different statute than just generic cyber-stalking. Mr. Ordoway also said that the government concedes that generic cyber-stalking is not a crime of violence. We did not make that concession. We did not address that issue in our brief because this is a cyber-stalking resulting in death. And I think even Mr. Ordoway recognizes that cyber-stalking resulting in death is a different offense. Turning briefly to Ms. Elkins' argument about the guideline error, in her principal brief, the error was that the district court used the wrong guideline range. That argument should be reviewed only for plain error. Nowhere in the district court did Ms. Elkins object when the district court was announcing the guideline range. In fact, the opposite. So when the district judge said, I'm adopting the guidelines, are those correct? Ms. Elkins' counsel said, that's correct, Your Honor. And that's at ROA 2595. The confusion arose because the district court then started reading what looks to me like paragraph 78 of the PSL. And that paragraph 78 sets out the statutory ranges. And there's an error in paragraph 78 because it says for count one, the statutory maximum is a life sentence. And that was wrong. Count one was a conviction under 371, which just carried a 5%. That's why the prosecutor later in the sentencing transcript again at ROA 2595 said, Your Honor, actually on count one, we're looking at 0 to 5. So there was no, the district court correctly adopted the guidelines. There was no error in that calculation. There was certainly no plain error. Any confusion in the statement of reasons form does not transform this sentencing transcript into one that is full of error. Mr. Ordoway mentioned the Johnson case and the Juarez case. Those cases are distinguishable because in those cases, on the face of the sentencing transcript, it was clear that the district court did not understand the correct guideline range for the 924C count. In Johnson, the district court said, I'm sentencing you to 187 months. That's a guideline sentence. And then in Juarez, the government actually conceded that the district court had used the wrong guideline range because the sentencing transcript made clear that that was the case. Here we have nothing like that. Here on the face of the sentencing transcript, it is clear the only discussion of the guidelines are when the district court adopts the guideline range that's in the PSR. That range is indisputably correct. Ms. Elkins does not dispute that range. The district court knew the correct range was 10 years, or the sentence was 10 years, and applied that range and upwardly varied up to a life sentence. Your Honors, I'm happy to address the bias claim or any other claims that this court has, or any other questions that this court has. You're free to address anything or not in your remaining time. I would like to touch on the bias claim briefly, Your Honor. The standard that this court has set out for bias is incredibly high. Ms. Elkins would have to show that the district court's actions were so improper that the jury confused the role of judge and prosecutor. And here, when you read the entire transcript, there is nothing like that in this room. Her best example is that the judge cut off her argument that beyond a reasonable doubt was proof needed to take a child off of life support. That argument was wholly improper. The district court acted well within its discretion to bar Ms. Elkins' counsel from making that argument. And this is not a case where the district court allowed the government to do something that it did not allow Ms. Elkins to do. So at ROA 2517, Ms. Elkins' counsel proposes to the district court, well, let's let the government add their own gloss on the reasonable doubt standard. And the district court said, no, they can't do that because it's properly in the charge. The jury has already been properly instructed on this point. So that does not show bias. We've explained thoroughly in the rest of our briefing why the rest of the examples of bias don't hold water. I do want to emphasize. And I think the appellant here has conceded that the jury was properly charged. So there's no dispute about that. Is that right? Correct. The appellant has conceded all but the bias. So there is no argument that the charge was improper. It's simply that because the district court did not let him make this improper argument, the court was somehow biased against Ms. Elkins. Two additional pieces of the record countermand any argument that there was bias here. The first is the district court's thorough instructions to the jury about the role of the court and to disregard anything that the district court had said as straight remarks. And then the second is the overwhelming evidence against Ms. Elkins. This is not a case like the United States versus Sands or some of the other cases where the evidence was weak and the district court took over questioning of critical witnesses. Here, the evidence was incredibly strong against Ms. Elkins. In fact, it was overwhelming. It showed Ms. Elkins and Mr. Beard engaged in a months-long campaign of terror. They planted drugs and a firearm in Ms. Burkett's car and called the police, saying that she was selling drugs to black men. The jury heard that Ms. Elkins bought the car that was going to be used in the murder before Mr. Beard ultimately bought a separate car. Ms. Elkins herself purchased the murder makeup, and she was with Mr. Beard when he purchased the murder weapons. And then as Mr. Beard went out and murdered his child's mother, Ms. Elkins sat home and filmed the video, creating an alibi for that murder. She then called his defense attorney, Tim Minshew, and said, Mr. Beard was with me. He could not have been responsible for this murder. The jury heard all of that overwhelming evidence. It easily rejected those arguments, and that also weighs against defining a plain error for bias. If the court has no further questions. All right, thank you. What result are you arguing for? Oh, yes, sir. What judgment do you would? We would ask the court to affirm on all the grounds. Okay. Thank you. Thank you, Mr. Bradshaw. Mr. Ortaway for rebuttal. Thank you, Your Honor. I would like to make five points if I have the time. First, I would like to know. Let me just ask you. I don't want to interrupt your five points. I'm sure they're very well organized. But what do you do with the point that this is a specific intent to harm a statute, and that that makes it different under Borden? Well, I'm glad you brought that up, because that's what I was about to get to. Okay. Well, first, I would like to emphasize that the government repeatedly said, the statute, the statute. This is not one statute. These are two statutes. That right there makes a difference. Second, the government seems to contend that there is a greater intent to harm requirement under the cyber-stalking offense than kidnapping, because kidnapping can be committed by indictment. But I think Judge Richmond is exactly right here, that there's no difference. The cyber-stalking offense, all it requires is an intent to caress or intimidate, which also is not any intent to cause physical harm. So it's really just like the kidnapping statute. Well, that's my question. I mean, you have an intent to harass, not necessarily get anywhere physically close to the victim. And then death results. And I'm having difficulty reconciling the Supreme Court's decision that says, it must be to be a direct result in. It has to be enough intent to use enough force to cause death. So it seems to me that the resulting in death statute does import some sort of mens re above intent to intimidate. And then the question I have is, can you say under Borden that recklessly causing death can meet resulting in death? That's my main question. Well, I think, Your Honor, the government's argument that indirect causation is sufficient under the Supreme Court's case law, I see that as helping our position. Because that, excuse me, if it were not indirect, then there would be, it would have a harder time arguing that it was not intended if you directly caused death. But because indirect causation is sufficient, then that is where you get these situations that we've imagined in our brief, where I harass you, and I am so ruthless and merciless about it, that you take your own life. Or I post your picture online and say that you're willing to have sex with strange men. A strange man travels to meet you and disappoints you and kills you. Well, has the Supreme Court ever said that a suicide is resulting in death from under a criminal statute? In other words, is that use of force when someone commits suicide? You intend to intimidate, the person kills himself. How is that resulting in death under a specific intent statute? When you don't want them to die, you just want to make them miserable. Well, I don't believe that it would be resulting in death under a specific intent statute. But this is not a specific intent statute. The resulting in death element contains no mental state requirement, which is why this is not a crime of violence. We touched on several of the points that I wanted to make here. The last few things I want to say are that, first, the government argued that Juarez and Johnson, it was clear there that the district court made a guidelines error. That is not correct. The whole point of this court's holdings in those cases were that it was ambiguous. Second, even if we do have a satisfied plain error review on our fourth ground, guidelines errors are the kind of rare errors that often do satisfy plain error review, as the Supreme Court has made clear. And here, importantly, the district court did not say that the sentence was not based on the guidelines. And the district court did not say that it would have reached the same sentence, irrespective of the guidelines, as courts so often do. Mr. Hortoway, you didn't use nearly all of your time in the beginning, and you only reserved four minutes for rebuttal. So I'll let you have an extra minute, because you wanted to cover some other points. Well, really, Your Honor, my discussion with the court covered my first three points, and I just hit my last two. So if there are no other questions. That's fine, then. Your case is under submission. Thank you. Thank you. Next case, Harvard Maintenance v. NLRB.